UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| EVA ROSE SCHNETZLER, <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security <br><br> Defendant. | CAUSE NO.: 1:18-CV-99-HAB |

**OPINION AND ORDER**

Plaintiff Eva Rose Schnetzler seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits. The Plaintiff argues that the Commissioner wrongfully denied an award of benefits and that the Administrative Law Judge (ALJ) erred: (1) by failing to incorporate the limiting effects from all her medically determinable impairments into the Residual Functional Capacity (RFC) and failing to make a rational connection between the facts and the RFC; (2) by overemphasizing her daily activities; and (3) by failing to give weight to her strong work history. The Defendant argues that substantial evidence supports the ALJ's decision and it should be affirmed.

**BACKGROUND**

On May 4, 2015, the Plaintiff protectively applied for a period of disability and disability insurance benefits alleging that she had been disabled since July 12, 2013. The agency denied her claims initially and on reconsideration. After a hearing on June 5, 2017,

an ALJ found that the Plaintiff was not disabled at any time from July 12, 2013, through March 31, 2017, the date she last met the insured status requirement of the Act. On February 20, 2018, the Appeals Council denied the Plaintiff's request for review of that decision making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981. This appeal followed.

## STANDARD OF REVIEW

The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). The question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ's findings are supported by substantial evidence and under the correct legal standard. *See Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003); *Schmidt v. Apfel,* 201 F.3d 970, 972 (7th Cir. 2000). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 308. A court will "conduct a critical review of the evidence," considering both the

evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must "provide a logical bridge between the evidence and [his] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Although the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the ALJ commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

**ANALYSIS**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C § 423(d)(2)(A).

3

The ALJ conducted the familiar five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The Plaintiff asserts that the ALJ erred in his assessment of the Plaintiff's RFC at step four of the process when he did not incorporate all limitations, overemphasized the Plaintiff's daily activities, and gave no consideration for her strong work history.

The ALJ determined that the Plaintiff had the RFC to perform most work activities associated with light work as defined in 20 C.F.R. 404.1567(b). The ALJ found that the Plaintiff could not climb ladders, ropes, or scaffolding; could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; and could occasionally reach overhead with her left upper extremity. (R. 15.) In making the RFC finding, the ALJ stated that he considered "all of the claimant's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1527 and SSR 17-2p." (R. 15.)

**A.     Incorporation of Impairments into the RFC**

The Plaintiff asserts that the ALJ did not incorporate all limitations, including those severe and non-severe, into the RFC, and did not build an accurate and logical bridge. The Defendant argues that the Plaintiff's contentions are without evidentiary support and must fail, as the ALJ adequately considered the evidence and discussed his rationale for assessing the Plaintiff's RFC as he did.

An ALJ must consider all a claimant's medically determinable impairments, both severe and non-severe, in the aggregate in determining her RFC. When an ALJ

determines that one or more of a claimant's impairments are "severe," "the ALJ need[s] to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original). "The fact that [an impairment] standing alone is not disabling is not grounds for the ALJ to ignore [it] entirely—it is [its] impact in combination with [the claimant's] other impairments that may be critical to his claim." *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014). That is, "a competent evaluation of [a claimant's] application depends on the total effect of all his medical problems." *Golembiewski*, 322 F.3d at 918; *see also Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) ("As we—and other circuits—have emphasized repeatedly . . . the *combined* effects of the applicant's impairments must be considered, including impairments that considered one by one are not disabling."). "A failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted); *see also Parker v. Astrue*, 597 F.3d 920, 923 (7th Cir. 2010) (finding that "failure to consider the cumulative effect of impairments not totally disabling in themselves was an elementary error"); *Terry*, 580 F.3d at 477 (noting that even where impairments would "not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether").

The ALJ arrived at an RFC that was slightly more restrictive than the State agency medical consultant opinions from Dr. M. Brill and Dr. J. Sands, who opined that the Plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently, could stand and/or walk for six hours in an eight-hour workday, and could sit for six

5

hours in an eight-hour workday. (R. 84, 94). She could occasionally climb, balance, stoop, kneel, crouch, and crawl, and could occasionally perform left overhead reaching. (R. 84–85, 95–96).

Although the Plaintiff has framed the issue as a failure to incorporate all limitations, she not does not identify any impairment or symptoms that the ALJ failed to consider. Nor has she pointed to any medical opinions that the ALJ should have considered. There are no medical opinions of record to support a more restrictive assessment. Accordingly, the Plaintiff's argument is better characterized as an assertion that the ALJ crafted an RFC that demands too much of her given the impairments that he did recognize. She argues:

> (Given her right knee impairments combined with her lumbar impairments and right leg impairment post femur fracture with metal rod implant), the limitations of standing and/or walking 6 out of 8 hours a day as subsumed in the ALJ's "light" RFC is not logical or supported by the evidence. Even at the very slow pace of one mile an hour, the ALJ's RFC assumes that Plaintiff has the ability of walking 6 miles a day while carrying at least 10lbs—5 days a week. Plaintiff's knee problems, lumbar problems, and leg problems are not minimal. In fact, they are substantial. She is not a twenty year old—She was 51 years old as of the alleged onset date and 55 years old as of the date last insured. *The ALJ expects her to be able to move with the exertion and endurance of an athlete on her decrepit knee, low back, and damaged leg.* The ALJ has failed to build an accurate and logical bridge.

(Pl.'s Opening Br. 14, ECF No. 19 (emphasis added) (footnotes omitted).)

The Plaintiff has overstated what it means to perform light work. Light work does not include the ability to walk six miles per day, or to move with the exertion and endurance of an athlete. Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the

6

weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). A policy statement issued by the Social Security Administration explains:

> "Frequent" means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, *off and on* for a *total of approximately* 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, *with the ability to stand being more critical than the ability to walk*. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

SSR 83-10, 1983 WL 31251, at *5-6 (SSA Jan. 1, 1983) (emphasis added). Additionally, the Plaintiff's argument makes no concession for scheduled breaks or a lunch period.

The Plaintiff is critical of the ALJ for not building an accurate and logical bridge. In doing so, however, she characterizes light duty as demanding the endurance and movement of an athlete and does not herself provide a logical bridge between the limitations caused by her impairments and what she can actually do. As stated already, the Plaintiff does not indicate which symptoms or impairments the ALJ ignored. In contrast, the ALJ's decision reveals that he considered the Plaintiff's severe back pain and discussed the findings from an August 2016 MRI study (R. 15-16). The ALJ considered the Plaintiff's left shoulder pain, and discussed findings from x-rays, arthrograms, and MRI studies (R. 16.) He also noted that the Plaintiff underwent three left shoulder

7

arthroscopic surgeries, namely a subacromial decompression, distal clavicle excision, biceps head tenotomy, and limited subacromial rotator cuff debridement in July 2015; a distal clavicle excision and rotator cuff repair in December 2016; and a subacromial decompression, rotator cuff repair, and debridement of abundant subacromial scar tissue in March 2017 (*Id.*) The ALJ also considered Plaintiff's right knee pain, and discussed the results from a May 2016 MRI. (*Id.*)

The ALJ discussed that the Plaintiff's physical examination findings had been largely within normal limits, except for tenderness over her left shoulder, an antalgic gait, crepitation in her right knee and left shoulder, positive Neer and Hawkin's signs in her left shoulder, positive FABER, and decreased range of motion in her back, left shoulder, and right knee. (R. 16.) There was no evidence of muscle atrophy or significant deficits in grip strength, reflexes, sensation, or fine finger manipulative ability. (*Id.*) Although her muscle strength in her right knee and left shoulder were noted at times to be weak, it was generally graded at no worse than "4" out of "5." (R. 16–17.) The ALJ also considered that Plaintiff used ice packs, underwent physical therapy, and took many different types and dosages of medications, such as Medrol, Percocet, Tramadol, Naproxen, and Norco. (R. 16.)

The Plaintiff has not pointed to anything erroneous in these statements and factual findings. The Court finds that they are relevant evidence that is adequate to support the RFC finding. In other words, the RFC is supported by substantial evidence and the Court will not reweigh the evidence.

**B.     Daily Activities**

The Plaintiff also argues that, in concluding that she could perform light work, the ALJ overemphasized her daily activities. Daily activities are just one of the factors that an ALJ considers when evaluating symptoms and determining to what extent they affect a claimant's capacity to perform basic work activities. *See* 20 C.F.R. § 404.1529. Here, the ALJ considered the Plaintiff's statements about her limitations, including the restrictive manner in which she performed certain activities. For example, the ALJ noted that the Plaintiff stated that she was able to wash dishes for only ten minutes at a time, was able to sit for just 30 minutes at a time, and was able to lift just 15–20 pounds, mostly with her right arm. (R. at 15.) He also noted that she was only able to stand for 30 minutes at a time and walk for just 10 minutes.

The ALJ was then required to "evaluate [those] statements in relation to the objective medical evidence and other evidence" in the record. 20 C.F.R. § 404.1529(c)(4). An ALJ is directed to "consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [the claimant's] statements and the rest of the evidence, including [her] history, the signs and laboratory findings, and statements by [her] medical sources or other persons about how [her] symptoms affect [her]." *Id.* "For example, an individual with reduced muscle strength testing who indicates that for the last year pain has limited his or her standing and walking to no more than a few minutes a day would be expected to have some signs of muscle wasting as a result." SSR 16-3p, 2016 WL 1020935, at *14168–69 (Mar. 16, 2016). "If no muscle wasting were present, we might not, depending on the other evidence in the record, find

9

the individual's reduced muscle strength on clinical testing to be consistent with the individual's alleged impairment-related symptoms." 2016 WL 1020935, at *14169.

In evaluating the Plaintiff's statements about her symptoms, the ALJ considered Plaintiff's physical exam findings and the opinions in the record, as cited above, including that her physical findings had been largely within normal limits. "[D]iscrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *Schmidt v. Barnhart*, 395 F.3d 737, 746–47 (7th Cir. 2005). He also considered that the Plaintiff worked after the alleged onset date and, at times, her earnings from this work activity exceeded the substantial gainful activity limit (R. 16.) The ALJ noted that the Plaintiff did not use an assistive device for ambulation or balance, she did not undergo any spinal surgeries, and she did not experience medication side effects that could not be adequately managed by medication changes or dose adjustments. (R. 16.) Plaintiff was able to take care of her personal needs independently, take her medications without reminders, feed her cats, go out alone, shop for groceries, pay bills, count change, handle bank accounts, do "some" cooking, laundry, dishwashing, and lawn mowing. (*Id.*)

The ALJ's decision contains specific reasons for the weight given to the Plaintiff's stated symptoms, it is consistent with and supported by the evidence, and is articulated so the Court can assess how the adjudicator evaluated those symptoms. The Plaintiff's Brief highlights some of the Plaintiff's testimony regarding her symptoms, but she does not articulate in what manner the ALJ overemphasized her activities. The language the ALJ used in describing the Plaintiff's activities does not indicate that he placed undue

10

weight on those activities or that he equated them with an ability to perform full-time work. Accordingly, the Court does not find the discussion of daily activities to be a basis for remand.

## C. Work History

The Plaintiff's final claim is that the ALJ erred in failing to give weight to the Plaintiff's strong work history. She asserts that a long and continuous past work record with no evidence of malingering is a factor supporting her credibility, and that the ALJ's failure to credit the Plaintiff's work history "calls into question the ALJ's entire credibility analysis." (Opening Br. 18.)

The Plaintiff's argument, in isolation, is of limited value. It references one aspect of her background to assert that the ALJ's "entire credibility analysis" is suspect. But unless the decision is so lacking in explanation or support that it is "patently wrong, it will not be overturned." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). "Although a consistent work history weighs in favor of a positive credibility finding, it is still just 'one factor among many, and it is not dispositive.'" *Summers v. Berryhill*, 864 F.3d 523, 528-29 (7th Cir. 2017) (quoting *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016)).

The Plaintiff asserts that she "labored at arduous work for large parts of her adult life even working through illness and injury." (Pl.'s Opening Br. 17 (footnote omitted).) The Plaintiff cites to pages 64, 192–93, 195–98, 424, and 476 of the record. Page 64 contains the Plaintiff's hearing testimony that after her she broke her leg and it healed, she went back to work. Pages 424 and 476 are presumably cited to show that she broke her leg in 1998. Pages 192–93, and 195–98 are her earning records.

11

The Court does not find reversable error in the ALJ's failure to discuss these aspects of the Plaintiff's work history. In any event, the records do not show that the Plaintiff consistently worked for any extended period (except for perhaps 2003 through 2008) much less that she labored at arduous work even through illness and injury. (*See* R. 191.) This is hardly probative given that her alleged onset date was July 12, 2013. *Cf. Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016) ("In assessing Stark's credibility about the disabling effects of her pain, the ALJ should have acknowledged Stark's efforts to continue work while experiencing significant pain and undergoing numerous surgeries and other treatments to relieve it."). Even assuming a gradual worsening of her impairments, the Plaintiff offers no explanation for her limited to no earnings in 2010, 2011, 2012, or 2013. Accordingly, the Plaintiff has not established that she is entitled to substantial credibility when she claims that she would be employed except that her physical limitations prevent her from being able to work.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is AFFIRMED.

SO ORDERED on July 2, 2019.

                                              s/ *Holly A. Brady*
                                              JUDGE HOLLY A. BRADY
                                              UNITED STATES DISTRICT COURT